**FARBENFABRIKEN BAYER, A.G., a corporation, Plaintiff,**

v.

**STERLING DRUG, Inc., a corporation, Defendant.**

**Civ. No. 908–55.**

United States District Court
D. New Jersey.

July 15, 1957.

See also 148 F.Supp. 738.

Arnold, Fortas & Porter, Washington, D. C. (by Thurman Arnold, Washington, D. C.), Alexander T. Schenck, Newark, N. J., for plaintiff.

O'Mara, Schumann, Davis & Lynch, Jersey City, N. J., by John T. Cahill and Cahill, Gordon, Reindel & Ohl, New York City, for defendant.

WILLIAM F. SMITH, District Judge.

This is a civil action under the anti-trust laws, and particularly Section 1 of the Sherman Act, as amended, 69 Stat. 282, 15 U.S.C.A. § 1, and Sections 4 and 16, of the Clayton Act, 38 Stat. 731 and 737, 15 U.S.C.A. §§ 15 and 26. The action is brought by the plaintiff, a corporation organized under the laws of Germany, as the "legal successor in interest" to certain rights of Farbenfabriken vorm v. Friedrich Bayer and Company, et als. The latter is hereinafter identified as "Friedrich Bayer and Company." The Complaint charges that the defendant and others, not named as defendants, are, and have been since 1918, engaged in a conspiracy in restraint of trade to the injury of the plaintiff. The plaintiff seeks to enjoin the alleged illegal restraint of trade and to enforce its claim for treble damages.

The defendant filed an answer in which it interposed as affirmative defenses: first, the bar of the statute of limitations, and second, the failure of the complaint to state a claim upon which relief can be granted. The defenses are raised at this time on the dual motion of the defendant, to wit, a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and a motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure, supra. The arguments advanced by the defendant in support of the motion are directed primarily to the allegations of the complaint.

These motions, although cast in the form of motions for judgment under the said rules, we shall treat as appropriate motions to dismiss the complaint on the grounds stated.

### Complaint

The complaint alleges generally that the defendant, and others not named, are, and have been, engaged in a conspiracy in restraint of trade in violation of the antitrust laws to the injury of the plaintiff. This general allegation, which pervades the complaint, is supported by specific allegations contained in 51 paragraphs. It should be noted that many of the paragraphs contain nothing more than a recital of the history of the plaintiff and its predecessors; this recital is

relatively unimportant at this time. The essential allegations of the complaint may be briefly summarized. The references hereinafter made to the plaintiff and defendant may be regarded as including their predecessors, except where it is otherwise noted.

The complaint alleges that: (1) The plaintiff and defendant are, and have been, engaged in the manufacture, sale and distribution of similar drugs and pharmaceutical products; (2) the defendant is, and has been, so engaged within the United States and in various other parts of the world; (3) the defendant is, and has been, directly and indirectly engaged in interstate and foreign commerce; (4) the plaintiff is, and has been, similarly engaged, except to the extent that its commerce within the United States is, and has been, limited by the alleged illegal restraints imposed upon it by the conduct of the defendant; (5) the defendant, by its conduct restrains, and has restrained, the plaintiff's entry into such commerce within the United States "to the extent necessary to permit a commercially feasible operation in the field of drugs and pharmaceuticals"; (6) the defendant, pursuant to and in furtherance of a conspiracy in restraint of trade, has gained complete control of a "substantial segment of the * * * market in the products" developed and produced by the predecessors of the plaintiff, to wit, Friedrich Bayer and Company and its subsidiary Bayer Co., Inc., of New York; (7) the defendant, in violation of the antitrust law, excludes, and has excluded, the plaintiff from the commercial market within the United States. The allegations herein summarized, couched in the most general terms and not particularized, are contained in paragraphs 1 to 12, inclusive, of the complaint.

The complaint further alleges that: (1) with the advent of the First World War, the Alien Property Custodian seized the assets of Friedrich Bayer and Company, including the stock of its wholly owned subsidiary Bayer Co., Inc., of New York; (2) these assets, including the aforesaid stock, were sold to Sterling Products, Inc., a predecessor of the present defendant; (3) the predecessor of the present defendant thus acquired the ownership and control of certain trademarks, including the well-known "Bayer Cross" and the trade name "Bayer"; (4) thereafter, between 1920 and 1923, the predecessors of the present litigants negotiated and executed certain contracts under which the predecessor of the defendant acquired certain rights, including trademarks, patents and secret processes not identified in the complaint; (5) these contracts, concluded in 1923, were negotiated and executed by the predecessors of the plaintiff under "economic duress"; (6) the predecessor of the defendant registered the trademarks, acquired from the Alien Property Custodian, in the United States and in other countries.

The complaint further alleges that: (1) the contracts of 1923 were illegal and an imposition on the plaintiff's predecessors; (2) the defendant's predecessor acquired under these contracts complete control of trademarks, patents and secret processes theretofore owned by the plaintiff's predecessors; (3) the defendant and its predecessor, by its ownership and use of the trademarks, patents and secret processes thus acquired, are, and have been, in such control as to exclude the plaintiff and its predecessors from the commercial market within the United States; (4) the exclusion is, and was, "as effective as it had been under the illegal agreements of 1923." The specific charge, as we construe the allegations of the complaint, is that the defendant, having gained control of the commercial market by its acquisition of trademarks, patents and secret processes, continues to exercise that control, and, by the exercise of that control, excludes, and has excluded, the plaintiff and its predecessors from the commercial market within the United States.

The contracts, to which reference is hereinabove made, are not before the Court, but it is conceded that these contracts were held to be in violation of the

antitrust laws in a final judgment entered in the United States District Court, Southern District of New York, on September 5, 1941 (United States v. Alba Pharmaceutical Company, Inc., et al., Civil Action No. 15–363). The present defendant was a party to that action and consented to the entry of the final judgment.

■ We shall assume for the purpose of discussion, but without deciding the general issue raised by the pleadings, that the conspiracy in restraint of trade, as charged in the complaint, existed, and that the conduct of the defendant and its predecessor, prior to 1941, was in furtherance of that conspiracy. This assumption is necessary if the allegations of the complaint are to be viewed in the light most favorable to the plaintiff, a course which must be adopted at this stage of the proceedings.

There is no specific allegation in the complaint that subsequent to 1941 the defendant committed any overt act in furtherance of the alleged conspiracy. There is a general allegation that the plaintiff and its predecessors have been excluded from the commercial market within the United States since 1949 but this alleged exclusion, as we view it, cannot be regarded as an overt act; it must be regarded as the consequence of the earlier conduct of the defendant and its predecessor, the injury of which the plaintiff complains and for which it seeks redress in this action.

If the exclusion of the plaintiff and its predecessors from the commercial market in the United States is ascribable to the conduct of the defendant and its predecessor, it is ascribable solely to the conduct of the defendant and its predecessor between 1918 and 1941. The exclusion, if it existed, became effective in 1923, when the agreements were concluded, and continued thereafter without any affirmative act by the defendant or its predecessor. It is not without significance that the plaintiff itself charges that the restraint of trade is, and was, occasioned by the earlier conduct of the defendant and its predecessor, particularly the acquisition of the trademarks, patents and secret processes, under the alleged illegal contracts.

There is a further allegation which should be considered. It is alleged in paragraph 47 that: "During 1954 and 1955 Sterling attempted by threats and intimidation to obtain from Bayer a waiver of its legal rights." It is further alleged "Bayer resisted all pressures. It refused to accede to demands to exclude it. It refused to acquiesce in the continuance of Sterling's monopoly and restraint against it." There is no allegation that the intimidation was the proximate cause of any injury to the plaintiff. Therefore, even if we regard it as an overt act, it is not such an overt act as will support a claim for damages. This conclusion, we believe, is supported by our later discussion. We are of the opinion that the allegation is mere surplusage.

### Claim for Damages

■ The defendant contends that the plaintiff's claim for damages is barred by the applicable statute of limitations. The pertinent provisions of the statute upon which the defendant relies, read as follows: "Every action at law * * * for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this title, * * * shall be commenced within 6 years next after the cause of any such action shall have accrued." N.J.S. 2A:14–1, N.J.S.A. 2A:14–1. The statute is applicable but it is necessary that we determine when the cause of action accrued.

■ A civil action for conspiracy is essentially an action in tort. It is well established that such an action cannot be maintained in the absence of: first, the overt act of one or more of the conspirators in the furtherance of the conspiracy; and second, the consequential damage to the rights of another of which the overt act is the proximate cause. The gravamen of the action lies not in the conspiracy but in the overt act. A cause of action accrues upon the commission of an overt act followed by damage

to another of which the overt act is the proximate cause. The statute of limitations runs from the commission of the last overt act alleged to have caused damage. Park-in Theatres v. Paramount-Richards Theatres, D.C., 90 F. Supp. 727, affirmed 3 Cir., 185 F.2d 407, certiorari denied 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; see also: Northern Kentucky Tel. Co. v. Southern Bell T. & T. Co., 6 Cir., 73 F.2d 333, 335, 97 A.L.R. 133, certiorari denied 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251; Steiner v. 20th Century-Fox Film Corporation, 9 Cir., 232 F.2d 190, 194–195. The victim of the conspiracy may continue to suffer damage long after the last overt act has been committed, but, if he is to preserve his cause of action, he must commence suit within the period defined by the applicable statute of limitations. Ibid.

The rule is discussed in Steiner v. 20th Century-Fox Film Corporation, supra. The language of the Court is apposite. It is therein stated, 232 F.2d at page 194: "The question: When does the statute of limitations begin to run? points to the first problem which must be here resolved. Appellant contends that where damages are in their nature continuing the statute runs from the date of the last injury. Under this view the statute of limitations would not run until all injury to a claimant had ceased. We must disagree. In a civil conspiracy, the statute of limitations runs from the commission of the last overt act alleged to have caused damage." (Citations omitted.)

It is further stated in the opinion of the Court, 232 F.2d at page 195: "In a continuing conspiracy causing continuing damage without further overt acts, the statute of limitations runs, as we have noted, from the time the blow which caused the damage was struck. Any further internal injury affects the problem of how much should be claimed in damages, not the problem of when the statute of limitations commences to run. Otherwise, in a continuing conspiracy, the cause of action of an injured party would never fully develop, nor would

there be any limitation upon the right of action, and the beneficent purpose of the statute to delimit the right to sue would be defeated." (Citations omitted.)

The plaintiff contends that it seeks to recover only those damages which it has sustained within the six year period next preceding the commencement of the action. These damages are not recoverable in the absence of a specific allegation that they were proximately caused by an overt act committed within the same period. The complaint fails to allege such an overt act.

These damages, if we interpret the allegations of the complaint correctly, are ascribed by the plaintiff to the conduct of the defendant prior to 1941, and particularly its conduct between 1920 and 1923, when, it is alleged, the defendant illegally acquired the trademarks, patents and secret processes theretofore owned by the plaintiff's predecessors. It should be noted that the Court is unable to fix with certainty the date of the last overt act but this is due entirely to the complete lack of particularity in the complaint. There is no allegation, however, that the defendant committed any overt act in furtherance of the conspiracy after 1941.

There is a general allegation that the plaintiff is, and has been, excluded from the commercial market within the United States, but this exclusion has been effective, according to the allegations of the complaint, since 1923. This exclusion, we have heretofore held, was not an overt act but the consequence of the earlier conduct of the defendant and its predecessor, the injury of which the plaintiff complains and for which it seeks redress.

We are of the opinion that the claim for damages here asserted by the plaintiff is barred by the statute of limitations for the reasons hereinabove discussed.

The defendant further contends that the complaint should be dismissed because of its failure to state a claim upon which relief can be granted. This contention is meritorious. We are of the opinion that in a civil action for conspiracy the complaint should *Allege With*

*Particularity* an overt act within the period defined by the statute of limitations. Since the gravamen of the action is the overt act, the allegation of an overt act within the said period is essential to the statement of a claim for relief. There is no such allegation in the present complaint.

The claim for damages will be dismissed for the reasons hereinabove discussed, but without prejudice to the right of the plaintiff to apply to the Court for leave to file an amended complaint. This should not be interpreted as an open invitation to merely redraft the allegations contained in the present complaint. An amended complaint will not be entertained unless the plaintiff can aver with particularity an overt act within the statutory period.

### The Claim for Equitable Relief

■ The bar of the statute of limitations may not be invoked as a defense against the plaintiff's claim for equitable relief. The statute of limitations, by its express terms, applies only to actions at law.

■■ There remains for consideration, however, the motion of the defendant to dismiss the complaint for failure to state a claim upon which relief can be granted. The claim for equitable relief may appear to rest on rather tenuous grounds, but at this stage of the proceeding the complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed "unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of [its] claim." Fredrick Hart & Co. v. Recordgraph Corporation, 3 Cir., 169 F.2d 580, 581. We are of the opinion that the complaint, tested by this standard, is sufficient to withstand the present attack. The motion to dismiss the complaint on the ground stated will, therefore, be denied.

We observe that the complaint charges in the most general language: first, that the defendant and others not named, are, and have been, engaged in a conspiracy in restraint of trade, in violation of the antitrust laws, to the injury of the plaintiff; second, that the defendant has gained control of the commercial market within the United States by its acquisition of trademarks, patents and secret processes in furtherance of the conspiracy; and third, that the defendant, by the exercise of this control, excludes the plaintiff from the said market. These charges are clothed in descriptive language which adds nothing to the essential allegations of the complaint. We are of the opinion that in the interest of orderly procedure the plaintiff should file with the Court, and serve upon the defendant, a more definite statement. This should be done at least thirty days in advance of the pretrial conference, if not sooner.

The more definite statement should contain: first, adequate references to the particular patents relied upon, together with their date of issuance; second, a description of the trademarks sufficient to identify them; third, a description of the secret processes sufficient to identify them; fourth, a statement of the manner in which the plaintiff is alleged to have acquired ownership of the aforesaid, whether from the Alien Property Custodian or under the contracts referred to in the complaint; and fifth, such other factual information as may assist in defining the issues with particularity.

### Motion To Stay Taking of Depositions

The motion of the defendant to stay the taking of depositions is dismissed.

### Application for Counsel Fees

The attorneys for the plaintiff have applied to the Court for an allowance of counsel fees to be assessed against the defendant. This application is denied.