RENDERED: MAY 6, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0336-MR

EUGENIO MAYOR                                                                 APPELLANT

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE ANGELA MCCORMICK BISIG, JUDGE
            ACTION NO. 17-CI-005931

CARL A. KIHM, DPM; AND
UNIVERSITY FOOT AND ANKLE
CENTER, LLC                                                                   APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL,
JUDGES.

McNEILL, JUDGE: Eugenio Mayor ("Mayor") appeals from the judgment of the

Jefferson Circuit Court after a jury returned a verdict in favor of Dr. Carl A. Kihm

("Dr. Kihm") and University Foot and Ankle Center, LLC in this medical

malpractice action. Finding no error, we affirm.

Mayor suffered a trimalleolar fracture of his right ankle while vacationing in Miami, Florida in late summer 2016. After receiving temporary medical care in Miami, Mayor returned to his home in Louisville, Kentucky to seek further treatment. On October 21, 2016, Dr. Kihm performed surgery to repair and stabilize the ankle. During surgery, Dr. Kihm reset and secured Mayor's fibula with a plate and screws. Because Mayor's tibia was in the correct position and stabilized, Dr. Kihm did not fixate the tibia with hardware. Dr. Kihm was concerned about the additional risks of a separate incision such as swelling, post-operative infection, and wound complications, which were elevated due to Mayor's age and smoking habit.

Dr. Kihm saw Mayor four times post-surgery. At the third visit on November 30, 2016, an x-ray showed that Mayor's tibia was not healing as expected. However, Mayor expressed no pain at the sight and Dr. Kihm noted that the fracture in general was progressively improving.

Dr. Kihm last saw Mayor on December 23, 2016. Mayor's tibia fracture had still not healed. However, it was an "asymptomatic non-union" because Mayor expressed no localized pain. Overall, Dr. Kihm felt Mayor's prognosis was "very good." Mayor's fibula had healed, his tibia was stable, and he was progressing overall. Dr. Kihm made a note in the medical records for Mayor to "follow up for reassessment in one month."

The parties dispute what happened next. What is certain is that Dr. Kihm never saw Mayor as a patient after December 23, 2016. On November 8, 2017, Mayor filed a medical malpractice action in Jefferson Circuit Court alleging that Dr. Kihm was negligent in failing to properly repair Mayor's tibia and that because of Dr. Kihm's negligence, Mayor "has continued disrupted mortise, painful nonunion of the medial malleolus, and will suffer accelerated post-traumatic arthrosis requiring additional ankle fusion surgery."[1]

At trial, Mayor's expert testified that Dr. Kihm breached the standard of care when he failed to perform an additional surgery to fixate Mayor's tibia on November 30, 2016, when x-rays showed the tibia was not healing. The expert further testified that on December 23, 2016, the date of Mayor's last office visit, Dr. Kihm knew Mayor's tibia was not healing and his failure to immediately perform surgery was malpractice.

A contested side issue concerned why Dr. Kihm stopped treating Mayor after the December 23, 2016 office visit. Dr. Kihm testified he did not know why he did not see Mayor in January following the December 23, 2016 appointment. However, he stated he did not discharge Mayor as a patient and told Mayor he wanted to see him again. Dr. Kihm's office records reflected Mayor's

---

[1] Mayor also asserted a vicarious negligence claim against Dr. Kihm's practice group, Appellee University Foot and Ankle Center, LLC.

January 24, 2017 appointment was "cancel[ed] due to no-show[,]" while a January 31, 2017 appointment was "cancel[ed] by patient[.]" Meanwhile, Mayor attempted to argue Dr. Kihm refused to see him because his insurance had expired.

Prior to trial, Dr. Kihm filed a motion *in limine* to exclude reference to either party's financial condition, and a motion *in limine* to exclude reference to liability insurance pursuant to KRE[2] 411. The motions were heard on the morning of trial. Arguing both motions simultaneously, Dr. Kihm asserted that evidence that Mayor's insurance had lapsed should be excluded. The trial court sustained the motions generally and further noted that she did not believe whether Mayor had insurance was relevant.

At trial, Mayor's counsel tried to elicit testimony from both Yenny Pino, Mayor's goddaughter, and Mayor himself that Dr. Kihm refused to continue seeing Mayor because Mayor's insurance had lapsed. Dr. Kihm objected and the trial court ruled that evidence of Mayor's financial position, including that his insurance had lapsed, was not relevant to whether Dr. Kihm was negligent, based upon Mayor's expert's testimony that Dr. Kihm should have fixated Mayor's tibia on November 30, 2016, and certainly by December 23, 2016, when Dr. Kihm knew the tibia was not healing.

---

[2] Kentucky Rules of Evidence.

Despite the court's ruling, Pino still testified on two occasions that Mayor was discharged as a patient because he did not have insurance. Further, Mayor stated that it was not his choice to stop seeing Dr. Kihm after the surgery. Following the evidence, the jury returned a verdict in favor of Dr. Kihm and University Foot and Ankle Center, LLC. This appeal followed. Additional facts will be set forth as necessary below.

Mayor argues the trial court misapplied KRE 411 to exclude evidence his personal insurance had lapsed when it sustained appellee's motion *in limine* No. 9 which sought to prevent evidence of Dr. Kihm's liability insurance. Therefore, he contends he was not allowed to introduce evidence that Dr. Kihm abandoned him as a patient because he did not have insurance, in violation of KRS[3] 311.597(4). He further asserts he was prejudiced by his inability to rebut suggestions that he was a noncompliant patient and that he did not show up for his appointments in January 2017. Mayor devotes his entire brief to arguing that KRE 411 does not apply to personal health insurance, only liability insurance, and that Dr. Kihm's abandonment of Mayor constitutes a violation of KRS. 311.597(4) and is negligence *per se*. He concludes with a request for this Court to "to review and rectify trial courts' fear of the word 'insurance' throughout the Commonwealth."

---

[3] Kentucky Revised Statutes.

There are several problems with Mayor's argument. But first we must address the deficiency of his appellate brief. His argument section fails to make "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by CR[4] 76.12(4)(c)(v). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). Mayor's brief does make several references to the trial court's ruling on appellee's motion *in limine* No. 9, with a citation to the record in his statement of the case. Because we have been able to determine his arguments were properly preserved, we will ignore the deficiency and proceed with the review.

---

[4] Kentucky Rules of Civil Procedure.

We review decisions to admit or exclude evidence under an abuse of discretion standard. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 720 (Ky. 2009). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted).

Contrary to Mayor's assertions, the basis for the trial court's ruling was not KRE 411 but KRE 402. On the morning of trial, the court addressed Dr. Kihm's motions *in limine* Nos. 1 and 9 to exclude reference to any party's financial condition and to exclude evidence of Dr. Kihm's liability insurance. During argument, Dr. Kihm specifically moved to exclude evidence Mayor's health insurance had lapsed. While Dr. Kihm argued both motions together and even mentioned that evidence Mayor's Passport insurance had lapsed should be excluded because it is a reference to insurance, it is clear the trial court ruled that such evidence was inadmissible because it was not relevant. The trial court's oral ruling on the record was as follows:

> The motion *in limine* is to exclude reference to either party's financial standing, and that is sustained in that normally in a case the relative financial strength or whether someone is rich or poor is not relevant to whether Dr. Kihm's care was negligent or not. So, in general, the motion to exclude reference to either party's financial standing and the motion to exclude reference to insurance is sustained as it is routinely in any trial. With

this specific issue of part of the decision not to seek follow-up care being that his insurance had lapsed, I don't think still that the insurance coverage or not is relevant . . . I don't think the financial position of either party should be relevant[.]

During the testimony of Yenny Pino, who accompanied Mayor to his appointments, Mayor's counsel attempted to ask Pino why Mayor did not see Dr. Kihm after the December 23, 2016 appointment. The parties approached the bench and the court clarified its previous ruling:

> [I]f her answer is going to be because he couldn't afford it, or because his insurance lapsed, or because the nurse said Dr. Kihm didn't want to treat him anymore. . . . I don't know that any of those are relevant. In other words, if Dr. Kihm is seeing your client – your argument is he should have said "now you need to come in for another surgery" and he didn't, I don't know if whether or not he kept his insurance up or whether or not he tried to pursue other options [for treatment]. . . . I just don't know if there is anything relevant in that answer. . . . I don't think the finances have anything to do with it.

Because the trial court's ruling was not based upon KRE 411, any arguments concerning that rule are not properly before us and we will not address them. "Questions which are merely advisory, academic, hypothetical, incidental or remote, or which will not be decisive of a present controversy do not present justiciable controversies." *Pettingill v. Pettingill*, 480 S.W.3d 920, 923 (Ky. 2015) (internal quotation marks and citation omitted).

However, we will address Mayor's underlying argument that the trial

court erred in excluding evidence of Mayor's insurance status. Mayor argues he "was not permitted to put on his case as he so intended because of the trial court's evidentiary ruling." We find the trial court did not abuse its discretion in excluding evidence that Mayor's insurance had lapsed under KRE 402.

"Trial courts enjoy substantial discretion in admitting or excluding evidence at trial." *Daugherty v. Commonwealth*, 467 S.W.3d 222, 231 (Ky. 2015). Pursuant to KRE 402, "[e]vidence which is not relevant is not admissible." "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401.

Evidence that Mayor's insurance had lapsed was not relevant to his claim of medical negligence. Mayor's expert, Dr. Anthony J. McEldowney, testified that Dr. Kihm was negligent when he did not perform a second surgery on November 30, 2016 or December 23, 2016 when he knew that Mayor's tibia fracture was not healing. Dr. McEldowney offered no criticisms of Dr. Kihm's care following those dates nor any criticism about Dr. Kihm's failing to see Mayor after the December 23, 2016 appointment. Therefore, any evidence of what occurred after those dates was simply not relevant to any issue the jury had to decide.

Further, Mayor can show no prejudice because, despite the trial court's ruling, Yenny Pino testified that Mayor stopped seeing Dr. Kihm because he did not have insurance. Mayor's counsel asked Pino if Dr. Kihm formally discharged Mayor as a patient and she replied yes because "we didn't have the insurance." At another point Pino stated the last time she took Mayor to see Dr. Kihm was to get more pain medication but "we got released, for no reason I guess, I don't know, because we didn't have insurance." Mayor also testified that it was not his decision to discontinue treatment with Dr. Kihm.

Lastly, to the extent Mayor argues he was not allowed to present evidence of a negligence *per se* claim based upon KRS 311.597(4) due to Dr. Kihm's abandonment of Mayor, we find no error. Such evidence was not relevant because his complaint did not state a claim for any violation of that statute. Neither was there evidence that any potential violation of KRS 311.597(4) caused Mayor injury. *See Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. App. 2004) ("[C]ausation and injury must still be proved in negligence per se claims.").

Accordingly, the judgment of the Jefferson Circuit Court is affirmed. Appellees' motion to dismiss is rendered moot by the decision in this Opinion and will be denied by separate Order entered simultaneously with this Opinion.

ALL CONCUR.

-10-

BRIEFS FOR APPELLANT:

Jeffrey A. Sexton
Louisville, Kentucky

BRIEF FOR APPELLEES:

Patricia C. Le Meur
Nicholas R. Hart
John F. Parker, Jr.
Louisville, Kentucky